**Pam PINO, Plaintiff–Appellant,**

**v.**

**E.P. HIGGS, Curt Faust, Marcella Wolf, Jim Naranjo, Harlan Weiss, Pablo Hernandez, Defendants–Appellees.**

No. 94–2079.

United States Court of Appeals, Tenth Circuit.

Feb. 5, 1996.

Frank A. Baca, Jr. and Lorenzo A. Chavez, Albuquerque, New Mexico, for Plaintiff–Appellant.

Ronald J. Childress and Elaine R. Dailey, of Klecan, Childress & Huling, Albuquerque, New Mexico, for Defendants–Appellees Higgs and Faust.

Charles W. Weese, of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant–Appellee Wolf.

Ronald W. Henkel, of Henkel, Sloan & Gay, Albuquerque, New Mexico, for Defendant–Appellee Weiss.

Walter G. Lombardi and Maha Khoury, of RMD Legal Bureau, State of New Mexico, Santa Fe, New Mexico, for Defendants–Appellees Naranjo and Hernandez.

Before KELLY and SETH, Circuit Judges, and BROWN, District Judge *.

SETH, Circuit Judge.

Appellant Pam Pino filed this civil rights action under 42 U.S.C. § 1983 against the six Appellees in their individual capacities. Appellant claimed that Appellees violated her constitutional rights by taking her from her home and transporting and detaining her for

emergency mental health evaluations at Socorro General Hospital and Las Vegas Medical Center (LVMC), both in New Mexico.

■ The district court granted summary judgment motions in favor of Appellees Marcella Wolf and Harlan Weiss, M.D., because they were not state actors, and in favor of Appellees E.P. Higgs and Curt Faust, City of Socorro police officers, and Appellee Jim Naranjo, a Socorro County Deputy Sheriff, on the basis of qualified immunity. Appellant contends that the district court erred in granting these motions. We review grants of summary judgment de novo, applying the same legal standards used by the district court under Fed.R.Civ.P. 56(c). *Uhlrig v. Harder,* 64 F.3d 567, 571 (10th Cir.).

In her docketing statement, Appellant also challenged the district court's order dismissing her claims against Appellee Pablo Hernandez, M.D., who was the hospital administrator at LVMC. However, because Appellant has failed to argue this issue in her brief, she is deemed to have waived the challenge on appeal. *See Bledsoe v. Garcia,* 742 F.2d 1237, 1244 (10th Cir.). We therefore affirm the dismissal of Appellant's claims against Dr. Hernandez.

The undisputed facts in this case include the following. Members of Appellant's family, concerned because Appellant had not eaten in several days and appeared despondent, called Marcella Wolf, a social therapist with Valencia Counseling Services, Inc., where Appellant had gone for counseling some time before. Wolf notified the Socorro Police Department, which dispatched Officers Faust and Higgs to Appellant's residence to investigate the situation.

Once there, Officers Faust and Higgs found Appellant locked in her bedroom refusing to come out. Officer Faust called Wolf to verify the information she had received from the family. Wolf recommended to the officer that Appellant be taken to the hospital for psychiatric evaluation. After some time, the officers convinced Appellant to open the bedroom door. Despite her admonitions that

* The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

she was fine, the officers insisted that Appellant go to the hospital, in restraints if necessary. Appellant eventually agreed and rode unrestrained in the back of Officer Faust's patrol car to Socorro General Hospital. Officer Higgs did not accompany them.

At the hospital, Dr. Weiss, the emergency room physician on call that evening, interviewed Officer Faust and examined Appellant. Dr. Weiss learned that Appellant's husband had committed suicide about a year and a half earlier; that she had seen a counselor at Valencia Counseling Services; and that she had taken medication for depression. He also learned that she had not eaten for eight days; that she had not come out of her room in the last day or two; and that her family was concerned about her. Appellant admitted to having had suicidal thoughts some six years previously but denied any suicide attempts.

Dr. Weiss determined that Appellant was severely depressed and likely to harm herself. Marcella Wolf also questioned Appellant at the hospital and agreed with Dr. Weiss that Appellant needed further evaluation. Dr. Weiss filled out a form indicating that Appellant appeared to be mentally ill; that she presented a likelihood of danger to herself or to others; and that immediate detention was necessary to prevent such harm. The form included Dr. Weiss' grounds for his opinion.

There was no space available at Socorro General and it was decided that since Appellant needed further evaluation she should be taken to LVMC. Deputy Naranjo was called to take Appellant to LVMC. Appellant again insisted that she was not mentally ill and at first refused to go with him. Having Dr. Weiss' certification that Appellant was mentally ill and represented a likelihood of harm to herself, Deputy Naranjo told Appellant that he would put her in restraints if necessary, but Appellant yielded. Accompanied by a female transport officer and a member of Appellant's family, Deputy Naranjo took Appellant to LVMC, where he released her to the custody of the Center staff. After an evaluation, Appellant was admitted into the facility and Deputy Naranjo returned to Socorro. Appellant remained at LVMC for two days, after which the staff there concluded that she was not mentally ill and released her.

### State Action/Under Color of State Law

■ To bring a claim under § 1983, a plaintiff must initially establish that a defendant acted "under color of any statute, ordinance, regulation, custom, or usage, of any State" to deprive the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Appellant's constitutional claims are that Appellees deprived her of her liberty without due process as guaranteed by the Fourteenth Amendment and unreasonably seized her in violation of the Fourth Amendment, as applied to the states by the Fourteenth Amendment. See *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Both of these claims must be grounded in state action. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2746, 73 L.Ed.2d 482. As the Supreme Court noted in *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185, the "under color of state law" and "state action" elements of a § 1983 claim, although similar and overlapping, "denote two separate areas of inquiry." Although state action necessarily constitutes action under color of state law, the converse is not always true. *Lugar*, 457 U.S. at 935 & n. 18, 102 S.Ct. at 2752 & n. 18.

There is no dispute that the actions of Officers Higgs and Faust and Deputy Naranjo were state actions taken under the color of state law. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142; *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495. The district court granted summary judgment in favor of Marcella Wolf and Dr. Weiss because neither met the definition of "state actor" and thus could not be subject to liability under § 1983. Since Wolf's involvement in this case differs from Dr. Weiss' involvement in important respects, we review Appellant's claims against each individual separately.

*Basis For The Claim Against Marcella Wolf*

The actions on which Appellant bases her claims against the therapist, Marcella Wolf, are (1) that Wolf initiated the police action by calling the dispatcher; (2) that she instructed Officer Faust over the phone to detain and transport Appellant to the hospital for psychiatric evaluation; and (3) that she participated in Dr. Weiss' decision to transport Appellant to Las Vegas. Even assuming that facts in the record support these interpretations of Wolf's conduct, none of her actions amount to state action or action under the color of state law for purposes of a § 1983 claim.

■ Nothing in the record suggests that Wolf is a state officer or state employee, and thus the district court properly considered her a private individual. Wolf was a therapist with Valencia Counseling Services, Inc., a private corporation in Socorro. In order to hold a private individual liable under § 1983 for a constitutional violation requiring state action, a plaintiff must show under *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753, that the individual's conduct is "fairly attributable to the State." As stated in *Wyatt v. Cole*, 504 U.S. 158, 162, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753):

> "This requirement is satisfied ... if two conditions are met. First, the 'deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.' Second, the private party must have 'acted together with or ... obtained significant aid from state officials' or engaged in conduct 'otherwise chargeable to the State.'"

In *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th Cir.), we stated:

> "[I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State."

■ Relying on the "close nexus" test developed in *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534, Appellant argues that Wolf acted in such close association with the police officers that her actions are attributable to the state, and therefore she acted under color of state law. As the Supreme Court stated in *Blum*, however, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* In *Blum*, the Court concluded that a private nursing home's decision to discharge or transfer a patient did not constitute a state action simply because the state responded by adjusting a patient's Medicaid benefits, where the state did nothing to command the nursing home's decision. *Id.* at 1005, 102 S.Ct. at 2786.

■ As with the private conduct in *Blum*, Wolf's conduct does not rise to the level of state action simply because Officers Higgs and Faust responded to her call to the dispatcher and heeded her advice to transport Appellant to the hospital. Moreover, Wolf, by her actions at Socorro General or otherwise, did not exercise "some right or privilege" or act under a "rule of conduct" created by state law as required by *Lugar*.

Without any grant of authority from the state, Wolf could no more be subject to a § 1983 action than Appellant's family members who reported the situation in the first place. As we stated in *Lee*:

> "We are disinclined to apply *Lugar* to a fact situation where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant."

820 F.2d at 1115. This statement applies with equal force to situations involving private reports of noncriminal activities requiring a response from state officials.

In sum, Appellant has failed to raise a genuine issue of material fact that Marcella Wolf acted under the color of state law, either as a state actor or in exercising a state-created "right or privilege" or "rule of

conduct" as a private individual. Wolf did nothing more than provide information which the police officers and a private physician may have considered in making their independent judgments. Her position with a non-public organization as a social therapist, while lending credibility to her opinion, carries with it no special state-generated authority that would make her conduct attributable to the state. We therefore affirm the district court's grant of summary judgment in favor of Appellee Wolf.

*Basis For The Claim Against Dr. Weiss*

Appellant complains that Dr. Weiss violated her civil rights when he examined, detained, and then authorized her transport to LVMC. Dr. Weiss is a private physician. There is no allegation or evidence in the record identifying Dr. Weiss as a state officer or employee. Thus, we must determine whether his actions are "fairly attributable to the state" under the *Lugar* analysis.

Section 43–1–10(E) of the New Mexico involuntary commitment statute dictates the procedure that an admitting physician must follow when a person is brought into a hospital for an emergency mental health evaluation:

> "The admitting physician or certified psychologist shall evaluate whether reasonable grounds exist to detain the proposed client for evaluation and treatment, and, if such reasonable grounds are found, the proposed client shall be detained. If the admitting physician or certified psychologist determines that reasonable grounds do not exist to detain the client for evaluation and treatment, the client shall not be detained."

As mentioned, Dr. Weiss was the emergency room physician on call when Appellant was brought to Socorro General by the police officer. This was not a state hospital. The state statute quoted above uses mandatory language; however, the state has no authority and cannot require the admitting doctor to examine such a "proposed client" anymore than it could require the examination of any other person who appeared at the emergency room. Thus, Dr. Weiss' actions in admitting Appellant to Socorro General were those of a private physi-

cian not "state action." As the Supreme Court stated in *Blum*, 457 U.S. at 1006–07, 102 S.Ct. at 2786–87, when considering the physician prepared forms for admission to a nursing facility under Medicaid: "We cannot say that the State, by requiring completion of a form, is responsible for the physician's decision." The examination on admission in the case before us was not "state action" for the same reasons described in *Blum*.

Dr. Weiss does not deny that he is a "licensed physician" within the meaning of the New Mexico involuntary commitment statute or that he examined Appellant and determined that she required further evaluation and treatment. Appellant argues that Dr. Weiss became a state actor when he certified Appellant for transport under § 43–1–10(A) of New Mexico's commitment statute:

> "A peace officer may detain and transport a person for emergency mental health evaluation and care in the absence of a legally valid order from the court only if:
>
> . . . .
>
> "(4) a licensed physician or a certified psychologist has certified that the person, as a result of a mental disorder, presents a likelihood of serious harm to himself or others and that immediate detention is necessary to prevent such harm. Such certification shall constitute authority to transport the person."

A private physician who certifies a person for purposes of § 43–1–10(A) is not subject to § 1983 liability simply because a state police officer responds by transporting or detaining that person. As the Supreme Court held in *Blum*, 457 U.S. at 1008, 102 S.Ct. at 2787, a state is not responsible for decisions that "ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State."

Two circuits have concluded that private party actions under state statutes that permit but do not compel, encourage, or pressure a private physician to execute certificates authorizing involuntary mental health examinations do not constitute state actions. *Harvey v. Harvey*, 949 F.2d 1127, 1130–31

(11th Cir.); *Spencer v. Lee,* 864 F.2d 1376, 1379 (7th Cir.). For reasons similar to the reasons discussed in those cases, we conclude that Dr. Weiss' certification of Appellant for transport under § 43–1–10(A) did not constitute state action. We therefore affirm the district court's grant of summary judgment in favor of Dr. Weiss.

Having concluded that Appellant's claims against Marcella Wolf and Dr. Weiss fail because their actions did not constitute state action under color of state law, we do not address the district court's alternative holding that they would be entitled to qualified immunity.

### Qualified Immunity

■ Officers Higgs and Faust and Deputy Naranjo moved for summary judgment on the basis of qualified immunity. The district court granted the motions because no clearly established federal law defined the process due when state actors take custody of an individual for an involuntary emergency mental health evaluation and because the officers acted reasonably under the circumstances. We review the presence or absence of qualified immunity de novo. *Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.).

■ The benefits of qualified immunity are available to "public officials." *Wyatt,* 504 U.S. at 167, 112 S.Ct. at 1832. As public officials, Officers Higgs and Faust and Deputy Naranjo are entitled to raise the defense of qualified immunity.

■ Qualified immunity shields public officials from § 1983 liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied. *Cummins v. Campbell,* 44 F.3d 847, 850 (10th Cir.). "In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time

of a defendant's actions." *Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir.) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277). In other words, a party attempting to avoid summary judgment based on qualified immunity "is obliged to present facts which if true would constitute a violation of clearly established law." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.) (quoting *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.)). Applying the two-part inquiry of *Siegert,* we conclude that Officers Higgs and Faust and Deputy Naranjo are entitled to summary judgment on their qualified immunity defenses because Appellant has failed to allege facts sufficient to show that Appellees violated any of her constitutional rights.

■ Appellant alleges Appellees violated her Fourth Amendment right to be free from unreasonable seizure. This right was implicated when Appellees detained Appellant against her will and coerced her into accompanying them to Socorro General and from Socorro General to LVMC by telling her that if she did not comply she would be taken forcefully in restraints. The "quintessential seizure of the person" under the Fourth Amendment occurs when officers use physical force to subdue a person or when the individual submits to the officers' assertion of authority. *California v. Hodari D.,* 499 U.S. 621, 624, 626, 111 S.Ct. 1547, 1549, 1550, 113 L.Ed.2d 690. The Fourth Amendment is not limited to criminal cases, but applies whenever the government takes a person into custody against her will. *In re Barnard,* 455 F.2d 1370, 1373–74 (D.C.Cir.). A seizure does not violate the Fourth Amendment, however, unless it is also unreasonable.

In the criminal arrest context, a Fourth Amendment seizure is reasonable if it is based on "probable cause." Because similar underlying interests arise in the context of a detention for an emergency health evaluation, several courts have applied an analogous "probable cause" doctrine in determining the validity of the government's seizure of a person for mental health reasons. *See, e.g., Villanova v. Abrams,* 972 F.2d 792, 795 (7th Cir.); *Gooden v. Howard County,* 954

F.2d 960, 968 (4th Cir.) (en banc); *Harris v. Pirch,* 677 F.2d 681, 686 (8th Cir.); *Baltz v. Shelley,* 661 F.Supp. 169, 178–79 (N.D.Ill.).

■ The state has a legitimate interest in protecting the community from the mentally ill and in protecting a mentally ill person from self-harm. A person suspected of mental illness possesses a right to liberty and a right to freedom from unfounded charges of mental infirmity. Because a seizure of a person for an emergency mental health evaluation raises concerns that are closely analogous to those implicated by a criminal arrest, and both are equally intrusive, we conclude that the "probable cause" standard applies here, as do the New Mexico statutory provisions.

■ Based on the undisputed evidence in the record, we determine that Officers Higgs and Faust acted reasonably under the circumstances and in accordance with New Mexico's involuntary commitment statute in detaining and transporting Appellant to Socorro General. The officers responded to a dispatch alerting them to a situation involving a potentially suicidal person. When they arrived at the address given to them by the dispatcher, they found Appellant locked in her bedroom refusing to come out. Appellant's family members advised the officers that she had not eaten in several days, and the officers verified the initial request for assistance and sought advice by calling Marcella Wolf from Appellant's residence. When Appellant finally opened the door she was wearing a nightgown and appeared disheveled. Pursuant to N.M.S.A. § 43–1–10(A)(3), Officers Higgs and Faust had the authority to "detain and transport a person for [an] emergency mental health evaluation" once they had "reasonable grounds to believe that the person, as a result of mental illness, presents a serious likelihood of harm to [her-]self or others and that immediate detention is necessary to prevent such harm." In light of the evidence before them, it was reasonable for the officers to conclude that Appellant posed a threat to herself and that she should be taken to the hospital for evaluation for her own protection.

Although Appellant offers alternative explanations as to why she had not eaten and why she might have appeared disheveled, the existence of alternative reasonable explanations does not render the officers' interpretation of events unreasonable. *Cf. Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (per curiam) ("[T]he court should ask whether the [government officials] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact."). Also, simply because Appellant and her family insisted that she was not mentally ill and did not need to be taken to the hospital does not make the officer's actions unreasonable.

■ We also conclude that Deputy Naranjo acted reasonably in transporting Appellant to LVMC. On his arrival at Socorro General, Deputy Naranjo was presented with Dr. Weiss' certification that Appellant presented a likelihood of serious harm to herself or others. Such a certification constituted authority under N.M.S.A. § 43–1–10(A)(4) for Deputy Naranjo to transport Appellant. Deputy Naranjo had no reason to question Dr. Weiss' certification or conclusion, other than Appellant's and Appellant's family members' admonitions that she was not suicidal. Appellant has not established any facts or circumstances to show that Dr. Weiss' certification did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to interpose his own medical judgments of a person's condition for those of a licensed physician. *See Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir.) (holding that to defeat qualified immunity on wrongful arrest claim, plaintiff bears burden of showing that officer's reliance on witness' statements for probable cause was unreasonable).

In sum, Officers Higgs and Faust, Dr. Weiss, and Deputy Naranjo can point to undisputed facts and circumstances in the record which demonstrates that they acted reasonably in detaining and transporting Appellant for the purpose of an emergency mental health evaluation under New Mexico's involuntary commitment statute. In opposition, Appellant has offered insufficient evidence to show that Appellees did not act

reasonably, and therefore has failed to allege a constitutional violation under the Fourth Amendment. Because the Appellees acted reasonably in detaining and transporting Appellant, our conclusion is not affected by the fact that LVMC subsequently determined that Appellant did not pose a threat to herself or others. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433. *See also Summers v. State of Utah,* 927 F.2d 1165, 1166–67 (10th Cir.) ("Since probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal.") (citations omitted).

Moreover, because Appellant has failed to establish that Appellees unreasonably seized her in violation of the Fourth Amendment, her Fourteenth Amendment due process claims also necessarily fail. To the extent that the involuntary seizure of a person for an emergency mental health evaluation mirrors a criminal arrest, the Fourth Amendment's protection against unreasonable searches and seizures more specifically applies to Appellant's situation than the Fourteenth Amendment's general substantive and procedural due process guarantees. In this context, procedural due process affords Appellant no more protection than her right to be free from unreasonable seizure, since "[t]he Fourth Amendment [probable cause requirement] was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Gerstein v. Pugh,* 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 868 n. 27, 43 L.Ed.2d 54. Since Appellant has not established that Appellees acted unreasonably in seizing her, it follows that she has not established that they violated her procedural due process rights.

Appellant's claim that Appellees violated the Fourteenth Amendment's substantive due process guarantee is even less availing. As the Supreme Court explained in *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114, a constitutional challenge based on a claim that a prosecution lacked probable cause must be brought under the specific guarantees of the Fourth Amendment rather than the generalized guarantee of substantive due process. *Cf. Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims [of excessive force during arrest]."). Likewise, Appellant's claim that she was unreasonably detained and transported must be brought under the Fourth Amendment. *See Gehl Group,* 63 F.3d at 1539 (holding that organizations claiming that the government violated their constitutional rights by interfering with their efforts to solicit charitable contributions must bring their complaint under the more specific guarantees of the First Amendment, Equal Protection Clause, and procedural component of the Due Process Clause rather than the more generalized protections of substantive due process).

In conclusion, Appellant has not met her burden in alleging that the police officers violated her constitutional rights and thus her § 1983 claims fail at the first inquiry under the *Siegert* analysis. As a result, qualified immunity protects Officers Higgs and Faust and Deputy Naranjo from further proceedings in this case. *See Losavio,* 847 F.2d at 644 ("The entitlement to qualified immunity 'is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' ") (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411) (emphasis in original).

For the foregoing reasons, the orders and judgments of the district court dismissing Appellant's claims against all Appellees are AFFIRMED.