**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

H.C. MASSEY,

     Plaintiff-Appellant,

and

MARY DEAN; WOODROW
FLOWERS; JAMES H. GILLESPIE;
ELIZA HILL; DOROTHY LEE;
JIMMY LONG; LILLIAN MEDINA;
BETTY SAWYER; DUNNESE
SCOTT,

     Plaintiffs,

v.

BOARD OF TRUSTEES OF THE
OGDEN AREA COMMUNITY
ACTION COMMITTEE, a non-profit
corporation,

     Defendant-Appellee.

No. 00-4037

(D.C. No. 97-CV-124)
(D. Utah)

**ORDER AND JUDGMENT** *

---

   * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRISCOE, PORFILIO,** Circuit Judges, and **MARTEN** , District Judge [**].

Plaintiff H.C. Massey (Massey) appeals the district court's order of summary judgment in favor of defendant the Board of Trustees of the Ogden Area Community Action Committee, Inc. (Board). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Massey was executive director of Ogden Area Community Action Committee, Inc. (OACAA), a nonprofit corporation established "to stimulate a better focusing of all available federal, state and local resources to aid low income individuals" in Ogden, Utah, and the surrounding area. Aplt. Br. at 4-5. The Board claimed it terminated Massey's employment for "just cause." Id. at 94. Massey sued the Board and several of the Board members who voted to uphold his termination, alleging he was wrongfully terminated without due process in violation of 42 U.S.C. § 1983. All defendants moved for summary judgment, arguing they could not be found in violation of § 1983 because they were not state actors. The district court agreed and granted summary judgment in favor of the defendants. Massey appeals this decision only as to the Board.

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. See Kendrick v. Penske

---

[**] The Honorable J. Thomas Marten, United States District Judge, District of Kansas, sitting by designation.

Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (citing Fed. R. Civ. P. 56(c)). "When applying this standard, we review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id.

Section 1983 "creates a cause of action against individuals who violate federal law while acting 'under color of state law.'" David v. City & County of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996); see also 42 U.S.C. § 1983. "[T]he only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotation omitted).

Massey alleges the Board was a state actor engaged in state action. His theory is that Utah state officials influenced the Board to terminate him. More specifically, he contends that Anne Kagie, Director of the Community Services Office of the Utah State Department of Community and Economic Development, orchestrated his termination.

Whether an action was taken "under color of state law" or whether it was a

"state action" are two separate areas of inquiry. See Pino v. Higgs, 75 F.3d 1461, 1464 (10th Cir. 1996). However, since "state action necessarily constitutes action under color of state law," id., the Board can be held liable if it was a state actor engaged in state action. "Application of the state action doctrine has been characterized as one of the more slippery and troublesome areas of civil rights litigation." Gallagher, 49 F.3d at 1447. The Supreme Court has taken a "flexible" approach, see id., applying four different tests, referred to as the nexus test, the symbiotic relationship test, the joint action test, and the public functions test, see Anaya v. Crossroads Managed-Care Sys., Inc., 195 F.3d 584, 595 (10th Cir. 1999). Each test requires very fact-specific inquiries. See Gallagher, 49 F.3d at 1448. It appears that Massey is invoking two of these tests.

Massey implicates the nexus test by arguing that a state "can be held responsible for a private decision only when it . . . has provided such significant encouragement, either overt or covert, that the decision at issue must be deemed to be that of the State." Aplt. Br. at 30-31 (citing Blum v. Yaretsky, 457 U.S. 991 (1982)). Under the nexus test, courts consider whether "'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'" Gallagher, 49 F.3d at 1447 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).

4

Massey also relies upon the symbiotic relationship test – "the cumulative effect of all of these links amounted to a symbiotic relationship that presented a question of fact as to the existence of state action." Aplt. Br. at 33-34. Under the symbiotic relationship test, courts inquire whether the state "'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'" Gallagher, 49 F.3d at 1451 (quoting Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 175 (1972)).

A review of all the evidence indicates that Massey cannot meet either test. There is no link between Massey's termination and the state. Rather, what prompted Board action were negative reports from many sources about Massey's management of OACAA. All major sources of funding identified problems with OACAA's compliance with rules. A U.S. Department of Health and Human Services (HHS) audit of OACAA's Head Start program uncovered substantial noncompliance with financial and administrative procedures. For example, HHS found OACAA was "unable to produce accurate and complete disclosure of financial data of the agency," and could not "accurately account for expenditures by grant year and funding period." Aplt. App. at 19. The audit found the deficiencies so grave that continuance in the Head Start program required that OACAA take various actions no later than June 19, 1997, including:

5

OACAA must reconstitute the Board of Directors to assure that, at a minimum, a quorum of Board members are seated.

OACAA must act to discharge the present Executive Director from his current position in order to restore public trust and confidence in its program. This objective cannot be met if OACAA allows the Executive Director to remain in his current position.

Aplt. App. at 19.

Massey seeks to establish state action by asserting Kagie was responsible for the audit. Specifically, Massey alleged "the state had called the federal government in Denver and asked the federal government to do certain things to remove [him]," and he believed Kagie made that call. Aplt. App. at 218. Massey stated a staff member told him someone named Bob at the federal government had called the staff member to say he had been called by a person from the state who wanted Massey fired, and that the person from the state was Kagie. Massey submits no admissible evidence in support of this assertion.

Other funding sources also identified problems with Massey's management. Although the actual audit report identifying the problems is not in the record, a letter from the Utah Department of Community and Economic Development, Division of Community Development, identified contract violations by OACAA that justified contract termination and termination of OACAA's participation in the Federal Community Services Block Grant program and, thus, elimination of funding. See id. at 12-13. Massey claims the fact that

6

Kagie signed this letter is "evidence" that she put OACAA's funding in jeopardy. Massey does not contest the allegation that OACAA violated its contract. Rather, he tries to blame the problem on the messenger. This allegation is unsupported.

Further, an independent investigator hired to evaluate various employee grievances filed against Massey found serious flaws in his management skills and possible illegalities in procedures. See id. at 166-205. Massey alleges Kagie was "involved" with the grievances, providing the requisite state action. However, he expressly states that he is not alleging Kagie "concocted the complaints against him" or that she influenced the investigation of the grievances. See Aplt. Br. at 32. Rather, he contends "Kagie was working behind the scenes to create a fertile environment" for his termination. Id. This is not evidence of state action.

The district court's grant of summary judgment in favor of the Board is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

7