

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2004

# Carver v. Plyer

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1076

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Carver v. Plyer" (2004). *2004 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-1076
_____

JEAN CARVER; CHARLES KIMBLE BOOZ

<u>Appellants</u>

v.

THOMAS PLYER; EDWARD C. DEX; QUAKERTOWN BOROUGH;
ST. LUKE'S HOSPITAL; JOANNE E. HULLINGS; TERESA BOHRER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-00375)
District Judge: Honorable Clarence C. Newcomer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 7, 2004

BEFORE: SLOVITER, VAN ANTWERPEN and COWEN, <u>Circuit Judges</u>

(Filed   October 12, 2004   )
_____

OPINION
_____

VAN ANTWERPEN, <u>Circuit Judge</u>

Jean Carver ("Carver") and Charles Kimble Booz ("Appellants") brought suit

against Quakertown Borough, two Quakertown Borough policemen, St. Luke's Hospital,

and two of its employees ("Appellees") under 42 U.S.C. § 1983. Appellants alleged that Appellees detained and treated Carver without her consent in violation of her due process rights under the Fourteenth Amendment. The District Court entered summary judgment in favor of the hospital and its employees.[1] Appellants now assert that the District Court abused its discretion in failing to give them notice that it was considering a motion for summary judgment; erred in granting summary judgment as to certain state law claims after dismissing Appellants' federal claims; and erred in finding that the hospital and its employees were not state actors for purposes of section 1983. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Since we write only for the parties we will state only the relevant facts. On October 4, 2002, police officers Todd Plyer and Edward Dex brought Carver from her home to St. Luke's Hospital ("St. Luke's") after learning from her fiancé that she had ingested a bottle of ibuprofen. Carver initially denied having overdosed and on that basis, Dr. Joanne Hullings ("Hullings") determined that she was not in need of treatment. However, Carver later told Hullings that she had ingested a bottle of Klonopin, and, on that basis, Hullings decided Carver needed her stomach pumped.

At some point, Carver attempted to flee the hospital on foot. Plyer and Dex, then in the process of leaving, chased Carver down and brought her back to the hospital in

---

[1] A settlement agreement was reached between Carver, Quakertown Borough, and the two Quakertown policemen, Todd Plyer and Edward Dex, on January 5, 2004. Consequently, the District Court dismissed the case with prejudice pursuant to Local Rule 41.1(b).

2

handcuffs. They then assisted a nurse, Teresa Bohrer, in putting Carver into four point restraints, while Carver attempted to kick the officers and bite the hospital staff. Hullings administered an injection of Haldol to calm Carver down and then had her stomach pumped. Blood tests later revealed Carver had recently consumed significant quantities of amphetamines, barbiturates, and alcohol. Carver subsequently signed a voluntary consent form for inpatient treatment at the psychiatric ward.

On February 5, 2003, Carver pled guilty to three counts of simple assault against the policemen and Bohrer, four counts of disorderly conduct, and one count of public drunkenness. She was sentenced to prison for a term of four to twenty-three months.

On January 24, 2003, Carver filed suit against Plyer, Dex, Quakertown Borough, St. Luke's Hospital, Bohrer, and Hullings. The hospital and its employees moved to dismiss, or, in the alternative, for summary judgment. The motion for summary judgment was granted by the District Court on May 5, 2003. On January 5, 2004, the District Court dismissed the suit with prejudice after Quakertown Borough, Plyer, and Dex reached a settlement agreement with Carver. Subsequently, Carver filed a motion to enforce the terms of the settlement agreement, which was denied by the District Court on January 26, 2004.

## II. STANDARD OF REVIEW

Premature grants of summary judgment by a District Court are reviewed for abuse of discretion. See Radich v. Goode, 886 F.2d 1391, 1393 (3d Cir. 1989). Review of the

3

actual grant of summary judgment is plenary. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 366 (3d Cir. 1990).

## III. DISCUSSION

As a preliminary matter, we respond to Appellees' uncontested arguments that Carver cannot maintain an appeal against Quakertown Borough, Plyer, Dex, Hullings, and Bohrer. We agree. With regard to Quakertown Borough, Plyer, and Dex, Appellants' Notice of Appeal indicated an appeal of the District Court's denial of their motion to enforce the settlement agreement.[2] However, Appellants did not raise this, or any, issue in their brief concerning these parties. It may be that the omission was due to the fact that the terms of this settlement agreement have since been fulfilled. Regardless, when an appellant fails to raise an issue in an appellate brief, even if it was listed in the Notice of Appeal, it is deemed waived. See Ghana v. Holland, 226 F.3d 175, 180 (3d Cir. 2000).

---

[2]    The original Notice of Appeal filed on January 8, 2004 stated that appellant, Jean Carver, was appealing "from the May 02, 2003 entered order [sic] that granted summary judgment to St Lukes Hospital [sic]." After the appeal was filed, an Amended Notice of Appeal was filed on January 28, 2004 stating that Plaintiffs Jean Carver and Charles Kimble Booz were appealing from the May 2, 2003 order "and the January 26, 2004 Order denying Plaintiffs' Locale [sic] Procedural Rule 41.1 motion to reinstate the case under [sic]."

The May 2, 2003 Order of the District Court contained a statement that "Judgment is entered in favor of St. Luke's Hospital, Joanne E. Hullings and Terri Bohrer and against the Plaintiffs." Nevertheless, sufficient reasons were not given for entering judgment as to less than all the parties as required by Fed. R. Civ. P. 54(b), and it appears from the docket that a separate document entering judgment was never filed as required by Fed. R. Civ. P. 58(a)(1). Accordingly, we believe the May 2, 2003 Order of the District Court did not become final and appealable until the District Court entered its Order dismissing the entire action with prejudice on January 5, 2004.

4

Accordingly, any issues concerning the action of the District Court denying the motion to enforce the settlement agreement are deemed waived.

Similarly, any issues concerning the District Court's order granting summary judgment as to Hullings and Bohrer are not properly before us, as Appellants have failed to list either party in their Notice of Appeal or Amended Notice of Appeal. While the Federal Rules of Appellate Procedure do not specifically require that all appellees be named in the Notice of Appeal,[3] we have previously held that where an appellant fails to name an appellee in a Notice of Appeal, the omission deprives this court of jurisdiction as to that appeal. See Carter v. Rafferty, 826 F.2d 1299, 1304 (3d Cir. 1987).

We now consider whether the District Court abused its discretion when it considered St. Luke's motion for summary judgment without expressly notifying Appellants that it would do so, and without providing them with an opportunity to conduct further discovery or holding a hearing on the matter. Appellants correctly maintain that it is reversible error for a District Court to convert a motion to dismiss to a motion for summary judgment without notifying the parties and giving them an opportunity to present material to the court. See Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). However, motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment. See Hilfirty v.

---

[3]Rule 3(c)(1)(B), Fed. R. App. P., requires that a Notice of Appeal "designate the judgment, order, or part thereof being appealed . . . ."

<u>Shipman</u>, 91 F.3d 573, 578-79 (3d Cir. 1996).

In the instant case, St. Luke's filed a motion entitled, "Motion to Dismiss Plaintiffs' First Amended Complaint/Motion for Summary Judgment." Thus, by virtue of the title alone, Appellants were on notice that the District Court might entertain a motion for summary judgment. Furthermore, Appellants' own response to St. Luke's motion, which was entitled "Plaintiff's [sic] Reply to Defendants . . . Motion to Dismiss the Plaintiff's [sic] First Amended Complaint/Motion for Summary Judgment," and which included a section discussing the appropriate standard of review for summary judgment and fifteen pages of exhibits, removes any doubt whatsoever that Appellants were aware that St. Luke's had moved for summary judgment. Thus, we find that the District Court did not abuse its discretion in converting St. Luke's motion to dismiss to a motion for summary judgment without expressly notifying Appellants.

Nor did the District Court abuse its discretion in not providing Appellants with an opportunity to conduct further discovery or in not holding a hearing. Appellants cite <u>Rose</u> for the proposition that a District Court must provide an opportunity to conduct discovery and hold a hearing when converting a motion to dismiss to a motion for summary judgment. However, Appellants' attempt to apply <u>Rose</u> here is misplaced. In <u>Rose</u>, the court held that the District Court erred in converting the motion because the only notice the non-moving party had was an ambiguous court order that referenced the court's intended consideration of a motion made pursuant to Fed. R. Civ. P. 12(b)(6). <u>See</u> <u>Rose</u>,

6

871 F.2d at 341.

In contrast to <u>Rose</u>, Appellants had clear notice that the District Court was considering a motion for summary judgment because St. Luke's motion was entitled as such. Moreover, if Appellants truly needed additional time for discovery, they had ample time in which they could have requested it. St. Luke's motion to dismiss/motion for summary judgment was filed on March 17, 2003, and the court did not rule on it until May 5, 2003. Yet they failed to submit any such request to the District Court.

As to Appellants' claim that they were entitled to a hearing with respect to the motion for summary judgment, the Federal Rules of Civil Procedure do not support their contention. While we have observed that Rule 56 appears to anticipate a hearing prior to a ruling on a motion for summary judgment, <u>Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S.</u>, 425 F.2d 34, 39 (3d Cir. 1970), we stated quite explicitly in <u>Rose</u> that Rule 56 includes only two prerequisites to a summary judgment ruling. <u>See</u> <u>Rose</u>, 871 F.2d at 340. These prerequisites are that the parties have at least 10 days notice before the court considers the motion and an opportunity to submit evidence in support or against the motion. <u>Id</u>. While in some cases a hearing might be viewed as a requirement, the number of such instances is small because, under Fed. R. Civ. P. 78, courts are permitted to rule on motions without oral hearings. <u>Id</u>.

We also find that the District Court did not err in entering summary judgment against Appellants as to certain state law claims after dismissing Appellants' federal

7

claims. Federal courts have discretion to exercise supplemental jurisdiction over pendant state claims, and the elimination of the federal claims in a case does not deprive the courts of this power. See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1505 (3d Cir. 1996).

Appellants' assertion that a federal court cannot exercise jurisdiction over supplemental state claims once it determines it lacks subject matter jurisdiction, Ray v. Eyster, 132 F.3d 152, 155 (3d Cir. 1997), is not applicable here because the District Court did not decide that it lacked subject matter jurisdiction over the federal claims. Rather, it dismissed them because it concluded, as we do in the discussion that follows, that the hospital defendants were not state actors.

Turning now to the final issue raised in this appeal, we hold that St. Luke's is not a state actor for purposes of section 1983 under any of the possible tests used to determine whether one's conduct is attributable to the state. Appellants' strongest argument here is that St. Luke's became a state actor under the "joint action" theory when it acted in conjunction with police to restrain and treat Carver without her consent. In Adickes v. S.H. Kress & Co., 398 U.S. 144, 151 (1970), the Supreme Court held that a private party can be held liable under section 1983 for attempting to deprive an individual of his or her constitutional rights if the private party "jointly engaged with state officials in the prohibited action." Adickes was then remanded so the lower court could determine if a store had acted jointly with a policeman in having a white woman arrested for attempting

8

to have lunch with a group of black students.  Id. at 148.

In spite of Adickes, the Fifth, Seventh, and Tenth Circuits have held that the use of police officers to assist in "the exercise of self-help" does not create a sufficient conspiracy with a private person to deprive an individual of their rights.  Bass v. Parkwood Hosp., 180 F.3d 234 (5th Cir. 1999), citing Spencer v. Lee, 864 F.2d 1376, 1381 (7th Cir. 1989).  In Bass, the court held there was no such conspiracy when police officers were used to detain an individual at a mental hospital after he voluntarily went there and allegedly told a doctor he wanted to poison his co-workers at a potluck meal.  Id. at 239.

Similarly, in Pino v. Higgs, 75 F.3d 1461, 1466-67 (10th Cir. 1996), the court held that a doctor who authorized commitment of a patient he suspected would harm herself was not a state actor even though the patient was brought in involuntarily by police and the doctor authorized police to transport her to an institution.  The court said that the doctor could not be held liable under section 1983 because a "state is not responsible for decisions that 'ultimately turn on medical judgments made by private parties according to professional standards not established by the state.'"  Id., citing Blum v. Yaretsky, 457 U.S. 991, 1008 (1982).[4]

_____

[4]It appears that the Pino court actually indirectly performed the "state compulsion" analysis, under which a private person can be considered a state actor if a statute compels him or her to do something.  The statement regarding medical judgments quoted above concerned a New Mexico statute and whether it compelled a doctor to commit a patient or whether it merely authorized a doctor to do so.  Id.  Still, Pino is relevant here because it too concerned a situation in which a doctor relied on the assistance of police officers to

9

Following the reasoning of the courts in <u>Bass</u> and <u>Pino</u>, the central question here is whether St. Luke's conspired with police to detain and force treatment on Carver. But even taking the facts as asserted by Appellants, albeit unsubstantiated,[5] once Hullings initially decided not to treat or detain her, the police left the hospital and were not present when Hullings decided to treat Carver. Thus, St. Luke's cannot be said to have acted jointly with police to treat and detain her. Nor can it be said that St. Luke's acted jointly with the state when police officers assisted hospital staff in restraining Carver once Hullings decided to treat her because the decision to treat was made prior to police spotting and then thwarting Carver's escape. Even if police *were* present when Hullings decided to treat Carver, there is simply no evidence to substantiate the allegation that the police somehow conspired with hospital staff to detain and treat her.

We also reject Appellants' argument that St. Luke's became a state actor under the "state compulsion" theory. Under this theory, Appellants contend St. Luke's was a state actor because it was compelled to treat Carver by the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 P.S. § 7301 *et seq.* Specifically, Appellants aver that the MHPA compels a certain course of action by hospital staff because it "delegates police

---

treat a patient.

[5]Appellants' Statement of Facts indicates that Officer Dex was not present when Hullings ultimately decided to treat Carver. However, Officer Dex's police report, which accompanied Appellants' response to Appellees' motion to dismiss/motion for summary judgment indicated that he *was* present at that time. As Appellants submitted no other evidence, such as an affidavit from Carver, which would have supported their version of the facts, we accept the report for the purposes of this appeal.

powers to perform such mental health services as intakes, involuntary commitments, and provide forced treatment to persons who are perceived as a clear danger to themselves, others, or property." Appellant's Br. at 18. We disagree.

In Janicsko v. Pellman, 774 F.Supp. 331, 337-38 (M.D. Pa. 1991), aff'd. 970 F.2d 899 (3d Cir. 1992), which we recently cited with approval in Benn v. Universal Health Systems, Inc., 371 F.3d 165, 171 (3d Cir. 2004), the court held that although the MHPA contains language which states that a mental health professional "shall" treat an individual if it is determined that emergency treatment is necessary, the actual determination of whether treatment is necessary is sufficiently discretionary so as not to compel any particular action. Id. We adopted this reasoning and accordingly hold that St. Luke's was not compelled by the MHPA to commit and treat Carver and cannot therefore be considered a state actor in this case.

We affirm the judgment of the District Court.