

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-1997

# Getahun v. Ofc Chief Admin

Precedential or Non-Precedential:

Docket
96-3531

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Getahun v. Ofc Chief Admin" (1997). *1997 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 15, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3531

ZELLEKA GETAHUN,
      Petitioner

v.

OFFICE OF THE CHIEF ADMINISTRATIVE HEARING
OFFICER OF THE EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW OF THE UNITED STATES
DEPARTMENT OF JUSTICE

      DUPONT MERCK PHARMACEUTICAL
      COMPANY,
      Intervenor-Respondent

On Petition for Review of Final Order of the
Office of the Chief Administrative Hearing Officer
of the Executive Office for Immigration Review
of the United States Department of Justice
(OCAHO Case No. 94B 00187(1996))

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 24, 1997

Before: SCIRICA and NYGAARD, Circuit Judges
and DEBEVOISE, Senior District Judge*

(Filed: September 15, 1997)

_____
*Honorable Dickinson R. Debevoise, United States Senior District Judge
for the District of New Jersey, sitting by designation.

      ANN M. BADMUS, ESQUIRE
      260 Chapman Road, Suite 100C
      Newark, Delaware 19702

      Attorney for Petitioner

      ROBERT J. SMITH, ESQUIRE
      Morgan, Lewis & Bockius
      1800 M Street, N.W.
      Washington, D.C. 20036

                    Attorney for Intervenor-Respondent

OPINION OF THE COURT

DEBEVOISE, Senior District Judge.

Petitioner, Dr. Zelleka Getahun, filed a complaint with
the United States Department of Justice's Executive Office
for Immigration Review, Office of the Chief Administrative
Hearing Officer ("OCAHO") pursuant to 8 U.S.C.
S 1324b(d)(2), charging that her former employer,
Intervenor-Respondent DuPont Merck Pharmaceutical
Company ("DuPont Merck"), committed "document abuse"
in violation of 8 U.S.C. S 1324b(a)(6) when it terminated her
employment on October 27, 1993. The Administrative Law
Judge to whom the case was assigned granted DuPont
Merck's motion for summary decision, holding that Dr.
Getahun was not authorized to accept employment in the
United States and thus lacked standing to assert a claim
under S 1324b. Dr. Getahun filed a petition for review in
this Court.

We will reverse the order of the ALJ dismissing Dr.
Getahun's complaint and remand the case for further
proceedings in accordance with this opinion.

A. The Facts

On January 10, 1991 Dr. Getahun began employment
with DuPont Merck. She had previously applied for political
asylum and had received an employment authorization
document which had a November 1991 expiration date. At

                              2

the time of her employment with DuPont Merck she
completed the mandatory INS Form I-9 and submitted her
Maryland driver's license and her Social Security number
card as evidence of her employability. She attested on the
Form I-9 that she was an alien authorized by the INS to
work in the United States but did not complete the blank
space calling for the expiration date of her employment
authorization.

On October 25, 1991 Dr. Getahun's application for
political asylum was granted. Pursuant to 8 C.F.R.
S 208.20, as in effect in 1991, employment authorization
was automatically granted or continued for persons granted
asylum:

        When an alien's application for asylum is granted, he
        is granted asylum status for an indefinite period.

Employment authorization is automatically granted or continued for persons granted asylum or withholding of deportation unless the alien is detained pending removal to a third country. Appropriate documentation showing employment authorization shall be provided by the INS.

However, 8 C.F.R. S 274a.12 provides that an alien granted asylum "who seeks to be employed in the United States, must apply to the Service for a document evidencing such employment authorization."

In November 1991 Dr. Getahun informed DuPont Merck's Human Resources Department that her application for political asylum had been granted. A department representative informed her that DuPont Merck would assist her in adjusting her status to permanent resident. Dr. Getahun applied neither for permanent residency nor for a new EAD based upon the grant of political asylum.

In October 1993 DuPont Merck's Human Resources Department, in conjunction with its Legal Department, instituted an internal audit of the Form I-9 of each employee to ensure that it was in compliance with the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. S 1324. Dr. Getahun's Form I-9 was among those found to be defective. It failed to set forth the date on which her EAD expired.

On October 21 Mary Beth Desmond of DuPont Merck's Human Resources Department brought this to Dr. Getahun's attention. The next day Dr. Getahun met with other members of the department. The parties' accounts of what was said differ. Dr. Getahun asserts that she was informed that she had to obtain a receipt evidencing her application for permanent residence and that if she did not provide such a receipt by October 27, 1993 she would be terminated.

Whatever the substance of the conversation, on October 25, 1993 Dr. Getahun gave a certified copy of the Memorandum of Decision and Order granting her political asylum to the Human Resources Department. She also went to the INS office in Philadelphia to apply for permanent residence. The INS clerk would not accept her application because she did not have her birth certificate from Ethiopia. However, on the advice of the clerk she applied for an EAD based upon her political asylum status and obtained a document fee receipt. On the morning of October 27 Dr. Getahun returned to the INS with her birth

certificate and filed for permanent residence, obtaining the appropriate document fee receipt.

Also on October 27 DuPont Merck's Human Resources Department called Dr. Getahun to schedule an appointment. When Dr. Getahun appeared she provided the fee receipts for the applications for permanent residence and for the EAD. Nevertheless the Department proceeded with the termination.[1] It provided Dr. Getahun with a letter of termination which stated that even though she had presented a valid U.S. driver's license and Social Security card containing no limitation on engaging in authorized employment, because her interim EAD had expired, "DuPont Merck is required by law to ask you for additional documents to establish your eligibility to engage in lawful employment with DuPont Merck."

_____

1. Six weeks after her termination Dr. Getahun received her EAD evidencing her work authorization pursuant to her asylum status, and on April 14, 1994 she was granted permanent residence, effective February 1, 1993.

4

DuPont Merck rejected Dr. Getahun's two document receipts evidencing her application for permanent residency and for an asylum-based EAD purportedly on the advice of an official at the INS office of the General Counsel in Washington, D.C., with whom DuPont Merck's legal counsel had communicated. The letter of termination stated that DuPont Merck had been "advised that an employer may accept a receipt for a replacement document if the employee completes section 1 on Form I-9 by indicating either that he or she is a U.S. permanent resident or a foreign national authorized to work until a specified date." The letter further stated, in effect, that since Dr. Getahun could not provide an expiration date of her work authorization, she could not rely on the receipts. As will be described below, DuPont Merck's rationale with respect to the document receipts constituted a misapplication of the INS legal memorandum upon which it apparently relied and an erroneous interpretation of the applicable law and regulations.

B. The ALJ's Decision

Dr. Getahun filed a charge of document abuse against DuPont Merck with the United States Department of Justice's Office of Special Counsel ("OSC") as permitted by 8 U.S.C. S 1324b(b)(1). The OSC decided not to issue a complaint, finding that DuPont Merck had not violated the provisions of IRCA because Dr. Getahun, as an asylee, had

failed to timely file for and obtain a required work authorization document. Thereupon Dr. Getahun filed a complaint against her former employer with the OCAHO as permitted by 8 U.S.C. S 1324b(d)(2).

Each side filed a Motion for Summary Decision supported by memoranda and affidavits. The rules of practice and procedure for administrative hearings before ALJs in cases involving allegations of unfair immigration related employment practices provide for entry of a summary decision if the pleadings, affidavits, material obtained by discovery or otherwise, show that there is no genuine issue as to any material fact. 28 C.F.R. S 68.38(c).

The ALJ noted that 8 U.S.C. S 1324 b(a)(1), which defines unfair immigration related employment practices, excludes

from its protections an unauthorized alien, as defined in S 1324a(h)(3). An "unauthorized alien" is defined in S 1324a(h)(3) as an alien who "is not ... either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General."

Dr. Getahun was not admitted for permanent residence at the time DuPont Merck terminated her employment. The ALJ found that in addition Dr. Getahun was not authorized to be employed in the United States. He reasoned that "[o]nce [Dr. Getahun's] interim EAD expired in November 1991, she was affirmatively obligated to obtain a new EAD. ... It is undisputed that [Dr. Getahun] did not apply for or receive a replacement document evidencing her work authorization. Therefore, as she lacked INS-issued documentation evidencing her work authorization, she was not eligible to accept employment in the United States, and thus was not eligible for the document abuse protections of IRCA set forth at 8 U.S.C. S 1324b(a)(6)."

On the ground that, lacking work authorization, Dr. Getahun did not have standing to proceed with an immigration related employment discrimination claim, the ALJ granted DuPont Merck's motion for summary decision but denied its request for attorneys' fees. This petition for review followed.

C. Decision

The OCAHO had jurisdiction of this case pursuant to 8 U.S.C. S 1324b(d)(2). This court has jurisdiction to review the order dismissing Dr. Getahun's complaint pursuant to

8 U.S.C. S 1324b(i)(1).

The standards governing the entry of summary judgment under Fed.R.Civ.P. 56(c) in federal court cases are applied in determining whether summary decision under 28 C.F.R. S 68.38(c) is appropriate in OCAHO cases. Alvarez v. Interstate Highway Construction, 3 OCAHO 430 at 17 (1992). Consequently, as in the case of a review of a district court's granting a motion for summary judgment, we exercise plenary review of the OCAHO decision resolving a motion for summary decision. Summary judgment is

appropriate only when, after consideration of the evidence in the light most favorable to the non-moving party, no genuine issue of material fact remains in dispute and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In this petition for review there is no issue of material fact. Rather, the question is whether on October 27, 1993 under the applicable statutes and regulations Dr. Getahun was authorized to be employed in the United States. OCAHO's conclusion that she was not so authorized is a question of law subject to plenary review.

Dr. Getahun seeks relief under 8 U.S.C. S 1324b(a)(1) and S 1324b(a)(6). Section 1324b(a)(1) provides in general terms that, except as to unauthorized aliens, "[i]t is an unfair immigration-related employment practice ... to discriminate against any individual with respect to hiring ... of the individual for employment or the discharging of the individual from employment...."

Under S 1324b(a)(6) it is an unfair immigration related employment practice relating to the hiring of individuals to request "more or different documents than are required under [S 1324a(b)] or refusing to honor documents tendered that on their face appear to be genuine...."

The ALJ concluded that Dr. Getahun was not entitled to assert a claim under these provisions because she was an "unauthorized alien", i.e., an alien not authorized to work. We apply a de novo standard of review to an agency's conclusions of law, although some deference is given to an agency's reasonable construction of a statute it is charged with administering. Mester Mfg. Co. v. I.N.S., 879 F.2d 561 (9th Cir. 1989). No amount of deference, however, would permit the conclusion that an alien who had been granted asylum and who had applied for (but had not received) an EAD was not authorized to work.

The ALJ's conclusion that Dr. Getahun was not authorized to work in the United States on October 27, 1993 because she had not applied for a renewal of her interim EAD when it expired in November 1991, failed to give effect to the October 25, 1991 order granting her application for political asylum. Pursuant to 8 C.F.R.

S 208.20 (as it read in 1991), "[w]hen an alien's application for asylum is granted, he is granted asylum status for an indefinite period. Employment authorization is automatically granted or continued for persons granted asylum...." (Emphasis added.) It is true that 8 C.F.R. S 274a.12 requires that an alien granted asylum who seeks to be employed must apply for an EAD. This is different from an interim EAD granted to a person who has an application for asylum pending.

By the time Dr. Getahun's interim EAD expired in November 1991, her application for asylum had already been granted. By virtue of the grant of asylum her employment authorization was "automatically" granted or continued. There would have been no reason thereafter to apply for a replacement of her interim EAD when it expired the following month. The ALJ was clearly in error when he ruled that Dr. Getahun was not authorized to be employed because she "did not apply for or receive a replacement" interim EAD.2

Dr. Getahun argues with considerable persuasiveness that 8 C.F.R. S 208.20 as it existed in 1991 was self-executing and that it provided employment authorization

_____

2. The ALJ's rationale would have been applicable only if Dr. Getahun's application for asylum had not been granted. In that situation Dr. Getahun would have been an alien who had filed an application for asylum which had not been decided and who "must apply for work authorization." 8 C.F.R. S 274a.12(c)(8). Only "[i[f authorized" could such person accept employment. In that case "authorization ... shall automatically terminate upon ... [t]he expiration date specified [by the EAD]." 8 C.F.R. S 274a.14(a)(1)(i). However, at the time in question these provisions had no relevance to Dr. Getahun, because she was no longer an applicant for asylum "whose application has not been decided."

The OSC who initially received Dr. Getahun's complaint reached his determination on a different ground from that of the ALJ, but it was equally meritless. He recognized that Dr. Getahun's application for asylum had been granted but rejected her claim because "she did not timely apply for the [EAD]." There is nothing in the regulations either as

they existed in 1991 or after the amendment of S 208.20 which imposes time limitations for applying for an EAD after being granted asylum. The ALJ appropriately did not rely on this ground.

whether or not the asylee applied for a new EAD. 3 According to this view, authorization was automatic (as S 208.20 specifically stated) and an EAD was simply evidence of such authorization. However, this question need not be addressed, because before DuPont Merck terminated Dr. Getahun she had applied for a new EAD as required by 8 C.F.R. S 274a.12. She had received a document receipt evidencing the application, and she presented the document receipt to DuPont Merck.

In accordance with 8 C.F.R. S 274a.2(b)(vi), the Form I-9 states that "[i]f employees are authorized to work, but are unable to present the required document(s) within three business days, they must present a receipt for the application of [sic] the document(s) within three business days and the actual document(s) within ninety (90) days." Dr. Getahun fully met the requirements of the option of presenting a document receipt in lieu of an EAD. She was authorized to work by virtue of S 208.20, and she presented a receipt for the application for an EAD. By the same token she had met any condition imposed by S 208.20 that she apply for an EAD, and she had met the requirement of S 274a.12 that she apply for an asylee EAD.

DuPont Merck's reason for demanding further documentation - the actual EAD - is meritless. It apparently relied on an undated communication written by R. Michael Miller, Acting Assistant Commissioner, to John L. Shaw, Assistant Commissioner Investigations (App. at 81). The question had been raised whether in the case of an F-1 student who had applied for employment authorization, a fee receipt was an acceptable document for employer verification purposes. Mr. Miller's response was that "a fee

_____

3. The language of S 208.20 has been amended to impose an obligation (without any time limitation) upon an asylee who intends to be employed to apply for an EAD:

   An alien granted asylum and eligible derivative family members
   are authorized to be employed in the United States pursuant to
   S 274a.12(a)(5) of this chapter and if intending to be employed,
must
   apply to the INS for a document evidencing such authorization. The
   INS shall issue such document within 30 days of the receipt of the
   application therefor.

receipt is acceptable ... only if the alien indicates that he/she is authorized to accept employment in the United States at the time of hire." On the other hand, "an alien seeking an initial period of employment authorization is not authorized to work in the United States nor to present a fee receipt as evidence of work authorization for purposes of employer verification." This advice was in accordance with the provision of 8 C.F.R. S 274a.2(b)(vi) permitting use of document receipts, which states that "[t]his section is not applicable to an alien who indicates that he or she does not have work authorization at the time of hire."

DuPont Merck erroneously equated Dr. Getahun with the student who was applying for authorization to work, an authorization which might or might not be granted. In such a situation a fee receipt would be inadequate. Dr. Getahun, on the other hand, had an absolute right to work, having been granted asylum and having applied for an EAD. DuPont Merck was required to accept a document receipt in lieu of the applied for EAD.

To justify its termination of Dr. Getahun's employment DuPont Merck relies upon its continuing obligation under applicable statutes and regulations to verify the employment eligibility of alien employees. Initial verification of employment eligibility is accomplished through the completion of INS Form I-9. 8 C.F.R. S 274a.2(a). This form contains two sections. The top section requires that the employee set forth information about herself including, if an alien, the expiration date of any employment authorization. The bottom section of the form requires the employee to produce and the employer to examine either a List A document or one document from List B and one document from List C. At the time of her employment in January 1991 Dr. Getahun did not provide the expiration date of her EAD at the top of the form. She provided a Maryland driver's license, a List B document, and she provided an unrestricted Social Security number card, a List C document.

IRCA requires that employers verify the identity and employment authorization of all employees hired after November 6, 1986. IRCA makes it unlawful to continue to employ an alien knowing that the alien is or has become

unauthorized to accept employment. 8 U.S.C. S 1324a(a)(2).
An employer is obligated to reverify the employment
eligibility of its employees not later than the date the work
authorization expires. 8 C.F.R. S 274a.2(b)(vii). Employers
are subject to penalties for failure to comply with their
obligation to verify employment eligibility in the manner
provided by the statute and regulations. 8 U.S.C.
SS 1324a(e)(4), 1324a(e)(5), 1324a(f).

In light of these statutory responsibilities DuPont Merck
was fully authorized, in fact required, to question Dr.
Getahun and seek supplemental documentation when,
during the course of its 1993 internal employee audit, it
learned that the Maryland driver's license which Dr.
Getahun had originally produced had expired and, in
particular, when it learned that the interim EAD pursuant
to which she had been employed had expired in 1991. Dr.
Getahun responded to these inquiries and produced
documentation establishing that she was authorized to
accept employment. The fact that DuPont Merck was
performing its obligation to verify employment eligibility did
not insulate it from a charge of document abuse.

The ALJ never reached the question whether DuPont
Merck's actions constituted document abuse. He stopped
after arriving at the clearly erroneous conclusion that Dr.
Getahun was not authorized to be employed and that
therefore Dr. Getahun did not have standing to bring an
action pursuant to 8 U.S.C. S 1324b(d)(2). There are facts in
the record which would support a finding that the refusal
to accept the documents which Dr. Getahun presented
constituted document abuse in violation of 8 U.S.C.
S 1324b(a)(6). However, this is an issue which the OCAHO
should address in the first instance.

Conclusion

For the reasons set forth above the order dismissing Dr.
Getahun's complaint will be reversed and the case
remanded to the OCAHO for reconsideration of Dr.
Getahun's motion for summary decision and for further
proceedings consistent with this opinion.

11



A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12