

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-1999

# Davis v. Twp. of Hillside

Precedential or Non-Precedential:

Docket 98-6176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Davis v. Twp. of Hillside" (1999). *1999 Decisions*. Paper 231.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/231

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 24, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-6176

HERRON GARNETT DAVIS,
      Appellant,

v.

TOWNSHIP OF HILLSIDE; PEARL WIGGINS;
JAMES WIGGINS; CHRISTINA WIGGINS;
SAM SMITH; DEIDRA BOSTON; CHRISTINA RASH;
LOREN RAGIN, Police Officer; RAGIN, Police Officer;
ROE, Police Officer; POLICE OFFICERS I through X;
TERRENCE CLERK; LOUIS PANARESE, Sergeant;
JOHN SENCHYSHYN, Patrolman;
GERARD PYDESKI, Patrolman

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 96-cv-05299)
District Judge: Dickinson R. Debevoise

Argued June 3, 1999

Before: SCIRICA, McKEE, Circuit Judges, and
SCHWARZER,* District Judge

(Filed August 24, 1999)

_____

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

ROBERT T. RICHLAN, ESQUIRE
 (ARGUED)
Paragano & Keough
75 Claremont Road, 1st Floor
Bernardsville, NJ 07924

Attorneys for Herron Garnett Davis,
Appellant

MORRIS R. ZUCKER, ESQUIRE
 (ARGUED)
JAMES K. HANEY, ESQUIRE
Zucker, Facher & Zucker
100 Executive Drive
Suite 360
West Orange, NJ 07052

Attorneys for Township of Hillside;
Loren Ragin; Terrence Clerk; Louis
Panarese; John Senchyshyn; Gerard
Pydeski, Appellees

JEAN-CLAUDE LABADY, ESQUIRE
 (ARGUED)
MAUREEN M. JOHNSTON, ESQUIRE
Law Offices of Robert Sanderford
17-01 Polett Drive
P.O. Box 768
Fairlawn, NJ 07410

Attorneys for Deidra Boston, Appellee

OPINION OF THE COURT

SCHWARZER, District Judge:

We must decide whether plaintiff is entitled to go to trial on his substantive due process claim on evidence that the defendant police officers conducted a high-speed chase of a suspect in violation of regulations, ending when their vehicle rammed the pursued vehicle causing a multi-car collision which severely injured plaintiff, a pedestrian bystander. We hold that County of Sacramento v. Lewis, 118 S.Ct. 1708 (1998), is dispositive and that, in the

2

absence of evidence from which a jury could infer a purpose to cause harm unrelated to the legitimate object of the chase, the evidence does not satisfy the requisite element of arbitrary conduct shocking the conscience. Accordingly, we affirm the summary judgment for defendants.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of November 13, 1994, Dwayne Cook was driving a stolen Acura in a residential neighborhood in Newark, New Jersey. Police officers in two patrol cars observed the Acura stopped in a traffic lane at a stop sign for what the officers considered an unusually long time. Noting also damage to the car's rear end, the officers decided to investigate and one of the patrol cars moved alongside the Acura to pull it over while the officers had the vehicle plate checked. At this point the Acura pulled away, making a left-hand turn out of the intersection. One of the police cars pulled ahead, coming close to hitting the Acura. The Acura then sped away with the marked police cars in pursuit as close as one car length at speeds up to seventy miles an hour with their overhead lights on but without sirens activated. Cook, knowing he was driving a stolen car, did not stop until one of the police cars, as Cook described it, bumped into the rear of the Acura, giving it a hard push. This caused Cook to hit his head on the steering wheel and to pass out. The Acura spun out of control and collided with two other cars, one of which was propelled into plaintiff, who was standing on the sidewalk, severely injuring him.

Plaintiff filed this action in the District Court against the Township of Hillside, individual Hillside police officers, and owners of the other cars involved in the collision alleging violations of federal and state law. The District Court granted summary judgment for defendants on all of the federal claims and dismissed the state law claims without prejudice under 28 U.S.C. S 1367(c) (1994). Plaintiff appeals the judgment for the individual officers on his 42 U.S.C. SS 19831 and 1985 (1994) claims and the dismissal of his state law claims.

_____

1. The District Court interpreted plaintiff 'sS 1983 claim as a substantive
due process claim. On appeal, plaintiff properly does not take issue with

3

DISCUSSION

I. 42 U.S.C. S 1983 SUBSTANTIVE DUE
PROCESS CLAIM

Plaintiff contends that the facts of this case make it
distinguishable from Sacramento County v. Lewis and
therefore preclude summary judgment. Our review is
plenary, see Ingram v. County of Bucks, 114 F.3d 265, 267
(3d Cir. 1998); we view disputed facts in the light most
favorable to plaintiff, and we draw all reasonable inferences
in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247 (1986); Getahun v. Office of the Chief
Administrative Hearing Officer of the Executive Office for
Immigration Review of the United States Department of
Justice, 124 F.3d 591, 594 (3d Cir. 1997).

Plaintiff's attempted distinction of Lewis rests on three
premises: (1) that the officers were not acting on a report of
the commission of a crime; (2) that they willfully violated
applicable police department regulations; and (3) that they
used deadly force on the pursued vehicle. We consider
these purported distinctions seriatim.[2]

_____

that interpretation. Even if the use of a police car to stop Cook's flight
could be found to be a Fourth Amendment seizure, see Brower v. County
of Inyo, 489 U.S. 593, 599 (1989); Adams v. St. Lucie County Sheriff's
Dep't, 962 F.2d 1563, 1571 (11th Cir. 1992), the claim would be
personal to Cook and could not be asserted by a bystander such as
plaintiff. See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Substantive
due process analysis is therefore appropriate in this case because
plaintiff 's claim is not covered by the Fourth Amendment. Lewis, 118
S.Ct. at 1714.

2. Another distinction, not raised by plaintiff and immaterial to the
outcome of this case, is that in Lewis the injury was to a suspect while
in this case it was to a bystander. In our pre-Lewis decision in Fagan v.
City of Vineland, 22 F.3d 1296 (3d Cir. 1994), we applied the shocks-the-
conscience standard to the S 1983 claims of bystanders, without
discussion. We agree with the Ninth Circuit's reasoning in Onossian v.
Block, 175 F.3d 1169, _____ (1999), that under Lewis "if a police officer
is justified in giving chase, that justification insulates the officer
from
constitutional attack, irrespective of who might be harmed or killed as a
consequence of the chase." See also Jones v. Sherill, 827 F.2d 1102,
1106-7 (6th Cir. 1987) (similar standard applied to injured bystander).

4

(1) In Lewis, the police pursued two boys on a motorcycle which the officers observed operating at high speed. See 118 S.Ct. at 1712. Neither boy had anything to do with the fight that had prompted the call that brought the officers to the scene. See id. In this case, the officers' suspicions were raised by Cook's unusually long stop at the intersection and rear-end damage to the car. Nothing in Lewis suggests that courts are free to second-guess a police officer's decision to initiate pursuit of a suspect so long as the officers were acting "in the service of a legitimate governmental objective," id. at 1716, here, to apprehend one fleeing the police officers' legitimate investigation of suspicious behavior. Because such circumstances, requiring a balancing of the need to stop a suspect's flight from the law against the threat a high-speed chase poses to others, "demand an officer's instant judgment, even precipitate recklessness fails to [suffice for Due Process liability.]" Id. at 1720. The critical factor in determining whether Fourteenth Amendment liability for a high-speed chase may be imposed is whether the officer's conduct can be found to shock the conscience, for which the evidence must show intent to harm the suspect physically. See id.

(2) In Lewis, the court of appeals had reversed summary judgment for the defendant officer, finding a triable issue of fact because he had "apparently disregarded the Sacramento County Sheriff's Department's General Order on police pursuits." Id. at 1712. The Supreme Court reversed, holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment," and that "[t]he fault claimed on [the officer's] part . . . fails to meet the shocks-the-conscience test." Id. at 1720. Lewis thus squarely refutes plaintiff's contention that the officers' violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process clause.

(3) In Lewis, the chase ended when the pursued motorcycle tipped over, throwing Lewis to the pavement where the police car coming to a stop accidentally skidded into him causing his injury. Here, the chase ended when

5

the pursuing police car bumped into the rear of Cook's car, causing him to lose control of the car, which led to the collision in which plaintiff was injured. Plaintiff argues that the deliberate ramming of Cook's car by the police vehicle amounted to use of a deadly weapon, which permits the drawing of an inference that the police acted with the intent to cause physical injury. We disagree. Lewis does not permit an inference of intent to harm simply because a chase eventuates in deliberate physical contact causing injury. Rather, it is "conduct intended to injure in some way unjustifiable by any government interest [that] is the sort of official action most likely to rise to the conscience-shocking level." Id. at 1718 (emphasis added). It is not disputed that the ramming occurred in the course of the chase. That physical contact of some sort between the pursued and pursuing vehicles might occur in the course of a high-speed chase, particularly at its conclusion, is foreseeable. It would undermine Lewis' premise to limit liability to conscience-shocking conduct if courts were to segment a high-speed chase and examine elements in isolation from each other.

Here then, as in Lewis, the officers were faced with lawless behavior--the flight from their investigation--for which they were not to blame. They had done nothing to cause Cook's high-speed driving or his flouting of their law-enforcement authority. Cook's action was instantaneous and so, by necessity, was the officers' response. Their intent was to do their job as law enforcement officers, not to cause injury. If they acted recklessly or imprudently, there is no evidence that their actions "were tainted by an improper or malicious motive." Id. at 1721. Because their actions did not shock the conscience, they were entitled to summary judgment.

II. 42 U.S.C. S 1985 CLAIM

Plaintiff also alleges that two of the individual police officers who chased Cook violated 42 U.S.C. S 1985 (1994) by filing false or misleading statements to investigators about their conduct on the night of the accident in an attempt to hide their culpable conduct. The only provision of S 1985 that could be relevant to plaintiff 's allegation is the second part of S 1985(2), which prohibits conspiracy to

obstruct justice with the intent to deny equal protection of the laws. Because plaintiff does not allege that the officers colluded with the requisite " `racial, or .. . otherwise class-based, invidiously discriminatory animus,' " see Kush v. Rutledge, 460 U.S. 719, 725 (1983) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)), the district court correctly dismissed this claim.

III. STATE LAW NEGLIGENCE CLAIMS

Having dismissed all of plaintiff 's federal claims, the district court dismissed without prejudice the state law claims against the owners of the civilian cars involved in the accident pursuant to 28 U.S.C. S 1367(c). The district court had discretion to do so and we find no error.

CONCLUSION

The judgment is AFFIRMED.

McKEE, Circuit Judge, concurring:

I agree that the District Court's grant of summary judgment to the defendants should be affirmed. I write separately, however, to amplify my understanding of what we hold today, because I am concerned that our decision may be interpreted too broadly, and thereby result in an unjustified extension of County of Sacramento v. Lewis, 118 S.Ct. 1708 (1998).

The mere fact that force may have been used while effectuating an arrest does not automatically establish that the force was "in relation" to a legitimate object of the arrest under a S 1983 analysis. Davis must lose here, not because the challenged force occurred "in relation to" a high-speed chase, but because his allegations of a substantive due process violation are rooted in negligence and allege, at most, a reckless disregard of safety. That is clearly insufficient under Lewis. However, I believe the evidence here, taken in the light most favorable to the plaintiff, could support allegations of an intentional ramming of the Acura Cook was driving. Had Davis alleged such intentional conduct, I do not think his suit would be appropriate for summary judgment under Lewis.

I.

Paragraph 13 of the Complaint states: "plaintiff . . . alleges that the police vehicle either struck the 1993 Acura . . . or chased such vehicle at such a high rate of speed so as to cause the (stolen) vehicle to collide with other vehicles, setting off a chain reaction . . . ." Paragraph 14 alleges that the pursuing officers were: "grossly negligent and [acted] with reckless and willful disregard for the safety of others . . . " in commencing and continuing the chase. Paragraph 18 alleges that the pursuing officers"either operated their vehicles in a negligent fashion, or permitted their vehicles to be operated in a negligent fashion such negligence being a contributing factor in the . . . collision. . . ." (emphasis added). Paragraph 21 alleges "the police chase . . . was knowingly improper and with wilful and/or reckless disregard for public safety and /or against established police guidelines and was engaged in with

8

wanton, wilful and reckless disregard for the safety of Davis and other persons and continued in such a manner as to shock the conscience of any reasonable person."

As the majority correctly points out, Lewis requires more. There, the Supreme Court held that absent "an intent to harm suspects physically or to worsen their legal plight" there could be no liability for a substantive due process violation in the S 1983 context. Lewis, 118 S. Ct. at 1720. It is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that "shocks the conscience" and gives rise to liability under S 1983 for injuries arising out of a high-speed chase. Id. at 1717 ("conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"). See also Maj. Op. at 6. Here, as in Lewis, the "complaint alleges a variety of culpable states of mind: negligently responsible . . . reckless, gross negligence and conscious disregard for [the plaintiff 's] safety . . . and oppression fraud and malice. The subsequent summary judgment proceedings revealed that the height of the fault actually claimed was conscious disregard . . ." Id. at 1720. That is simply not sufficient.

In Lewis the Court was careful to note that the pursuing officers may have acted imprudently, even recklessly, but that the evidence did not support a conclusion that they intended to "terrorize, cause harm, or kill" the decedent. Id. at 1708. In fact, there the uncontradicted evidence was that the police car skidded over 140 feet trying to stop once the police saw that the fleeing motorcycle had crashed. That is, "the chase ended when the pursued motorcycle tipped over, throwing Lewis to the pavement where the police car coming to a stop accidentally skidded into him causing his injury." Maj. Op. at 5 (emphasis added). The fatal injuries sustained by Lewis were clearly a tragic, unintended result of the high-speed pursuit. There were no allegations that the police deliberately ran the decedent over or rammed the motorcycle.

Here, if the record supported a finding that police gratuitously rammed Cook's car, and if plaintiff properly alleged that they did so to injure or terrorize Cook, liability could still attach under Lewis. Thus, for example, if

9

plaintiff alleged (and a fact finder could reasonably conclude) that the officers rammed Cook to "teach him a lesson" or to "get even" for subjecting them to the dangers of such a chase, Lewis would not shield the officers from liability even though they were ultimately effectuating an arrest. However, the District Court held that under Lewis a plaintiff must also provide evidence of a purpose to cause harm "independent of the process of stopping the suspect." Order at 9-10. I do not believe that is supported by Lewis. If police officers decided to stop a fleeing suspect by inflicting spinal cord injury in the hopes that the suspect would never walk again, the application of such force would not be truly "independent of the process of stopping the suspect." Nevertheless, their intent to harm, injure or terrorize the suspect might well shock the conscience and subject them to liability under Lewis. Thus, I do not read the majority opinion as holding that police can use any amount of force during a high speed chase no matter how tenuously the force is related to the legitimate law enforcement objective of arresting the fleeing suspect.

It has long been established that law enforcement officials may not act in a manner that "shocks the conscience" even when their actions relate to the otherwise legitimate object of obtaining credible evidence or prosecuting criminal behavior. People of California v. Rochin, 342 U.S. 165, 172 (1952) (pumping suspect's stomach to obtain valuable, credible evidence of a drug crime violates due process). Neither the decision in Lewis, nor our decision here, creates a "high-speed-pursuit" exception to the fundamental obligation of law enforcement officials to respect "certain decencies of civilized conduct" even when carrying out their official duties. Lewis, 118 S. Ct. at 1717 (quoting Rochin, 342 U.S. at 173, with approval). The police in Rochin were liable because, even in the context of enforcing the law, "the Due Process Clause [is] intended to prevent government officials `from abusing their power, or employing it as an instrument of oppression.' " Lewis, 118 S. Ct. at 1716 (quoting Collins v. Harker Heights, 503 U.S. 115, 126 (1992)). "[I]t was not the ultimate purpose of the government actors [in Rochin] to harm the plaintiff, but they apparently acted with full

10

appreciation of what the Court described as the brutality of their acts." Lewis, 118 S. Ct. at 1718 n.9.

Lewis merely establishes that the environment in which law enforcement officers perform their duties informs the substantive due process analysis.

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates `the large concerns of the governors and the governed.'

Lewis, 118 S. Ct. at 1720. Accordingly, "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under S 1983." Id. If there is "reasonable justification [for their actions] in the service of a legitimate governmental objective," they are not liable under Lewis even though they acted in a manner that was negligent or even reckless. Lewis, 118 S. Ct. at 1716. In Lewis the Court stated:

> [W]hile prudence would have repressed [the officer's] reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the motorcycle driver's] lawlessness, or to terrorize, cause harm or kill. Prudence, that is, was subject to countervailing enforcement considerations . . . there is no reason to believe that [the police] were tainted by an improper or malicious motive. . .3

_____

3. Similarly, in Fagan v. City of Vineland, 22 F.3d 1296 (3d Cir. 1994), we held that "where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking the conscience, a court may conclude that the officers have crossed the constitutional line." 22 F.3d at 1308. In Fagan, a police officer attempted to stop and issue a warning to the driver of a Camaro when he saw a passenger standing up through the vehicle's open T-top roof. When the driver refused to stop, the officer commenced a high-speed pursuit through a residential neighborhood. The Camaro eventually ran a red light at an intersection and broad-sided a pick-up truck. The two occupants of the truck and one of the passengers in the Camaro were killed; two other passengers in the Camaro suffered crippling injuries. Because the officer's actions were reckless, but not

11

Id. at 1721.

By way of example, I do not think that under Lewis police would be justified in firing shots directly at the driver of a fleeing car after initiating pursuit for a minor traffic violation, knowing that the fleeing car was about to reach a dead-end or some barricade that would force the driver to stop. I believe Lewis would allow a reasonable fact finder to conclude, based on the circumstances, that the action of the apprehending officers was intended to injure or terrorize the driver, thus permitting a determination that the driver's substantive due process rights had been violated. Such an intent to harm may be understandable given the dangers of law enforcement, but it also would be intolerable and absolutely collateral to any legitimate law enforcement objective.

II.

The majority states: "Lewis does not permit an inference of intent to harm simply because a chase eventuates in deliberate physical contact causing injury." Maj. Op. at 6. I must respectfully disagree with the breadth of that statement. I think the validity and the strength of any such inference depends entirely upon the totality of circumstances surrounding the contact, including the severity of the contact. The Supreme Court was careful to except from its holding cases where there was an intent to harm, terrorize or kill. I believe that there may well be those rare situations where the nature of an officer's "deliberate physical contact" is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill.

_____

"arbitrary, intentional, [or] deliberate," we affirmed the trial court's grant
of summary judgment in favor of the government. Although Fagan was decided prior to the Supreme Court's decision in Lewis, we similarly held that "where a person suffers injury as an incidental and unintended consequence of official action, the abuse of power contemplated in the due process and eighth amendment cases does not arise." Id. at 1307 (emphasis added).

12

There often is no way to establish subjective intent, other than by the reasonable fact finder's common sense evaluation of the circumstances. See Rock v. Zimmerman, 1991 WL 148490, *8 (3d Cir. (Pa.)) (inferring intent from circumstances is "entirely appropriate and is often the only means of proving criminal intent"). Lewis establishes as a matter of law that the circumstances of the chase at issue there were insufficient to establish the required intent. It did not abrogate the rules of deductive reasoning and common sense that juries use every day. Indeed, intent, particularly in constitutional cases, often must be inferred from circumstantial evidence. See, e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-68 (1977) (determination of discriminatory motive requires inquiry into circumstantial evidence); Oregon v. Kennedy, 456 U.S. 667, 675 (1982) (intent of prosecutor to subvert the protections afforded by the Double Jeopardy Clause may be inferred from objective facts and circumstances); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 693-98 (1993) (relying on circumstantial evidence to find high level officials liable for civil rights violations and recognizing that inS 1983 cases circumstantial evidence "is often the best and most reliable proof of the subjective motivations for the conduct of the actors").

Moreover, although I agree that the alleged violation of police regulations here does not advance the plaintiff 's claim, see Maj. Op. at 5, I think that the violation of such regulations will sometimes be relevant. For example, here, plaintiff submitted evidence that the officers did not comply with police department guidelines and regulations for initiating and conducting high-speed pursuits. One of those guidelines characterizes such conduct as use of "deadly force" akin to firing a weapon and states that officers should engage in such contact only "as a last resort to prevent eminent death or serious injuries." I believe a jury should be able to consider the alleged violations of department regulations, along with evidence contradicting the officers' account of what happened, to the extent they are relevant to the officers' intent. Defendants here have completely denied any police involvement in the accident which resulted in Davis' injuries. The police claim that they

13

broke off the pursuit blocks before the accident because their overhead lights had malfunctioned. However, there is strong evidence to the contrary. There is evidence that, although the overhead lights did have problems in the past, they had been repaired 24 hours before the accident. Moreover, departmental regulations require officers to check their patrol cars for equipment problems before going on patrol. The car that collided with Cook was used on the very next shift, and there is no evidence that the patrol car was taken for any repairs to its overhead lights following the accident. Finally, eye-witness accounts directly contradict the officers' denials of involvement. Richard Hall, a disinterested bystander, submitted a sworn affidavit stating that the police car did "bump" or "hit" the Acura, possibly twice, before the Acura went out of control. Dwayne Cook, the driver of the Acura, also testified that he felt a "jerk," which was caused by the police car bumping him. He further testified that the impact caused him to hit his head on the steering wheel and pass out.

As noted previously, none of this is relevant here because plaintiff alleges, at most, that the police acted recklessly. However, I believe such violations and conflicts in testimony would be relevant in an appropriate case as probative of a defendant's intent.

III.

In conclusion, I concur in the judgment of the majority. However, as I mentioned at the outset, I write separately because I think there are subtle, and perhaps misleading, nuances arising from the decision in Lewis which merit further discussion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit