**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ROBIN G. WAKELAND,

        Plaintiff-Appellant,

v.

BENJAMIN MONTANO, Santa Fe
County Sheriff, in his individual and
official capacities; VINCE CRESPIN;
LARRY MARTINEZ; JOHN
LUCERO; DENNIS O'BRIEN; RON
BUCHHOLZ; LINDA M. ORTIZ;
VANESSA LAHARGOUE, Santa Fe
County Sheriff Office Officers, in
their individual and official
capacities; JOHN DOES 1-4; JOHN
DOES 6-13, Santa Fe County Sheriff
Office Officers, in their individual
and official capacities; SANTA FE
COUNTY SHERIFF OFFICE
DISPATCHERS, John/Jane Does,
unnumbered, in their individual and
official capacities; JOHN DOE 5,
New Mexico Department of Public
Safety Law Enforcement Officer, in
his individual capacity; JUDITH
HERRERA; ELEANOR
BLAKEMORE; RONALD WINGER;
JAMES GREEN; RUTH N.
PENNYCOOK; SAM BALLEN;
DAVID BROWN; RICHARD
CARPENTER; ROBERT
DENNISON; BILL MONTOYA;
MARIO PACHECO; JOSEPH RUIZ;
LAURA WOLFSWINKEL;
LAWRENCE SHANDLER;

No. 99-2175
(D.C. No. CIV-97-793-JC/JHG)
(D. N.M.)

JAMES F. HALLQUIST; WILLIAM LITZENBERG; IRA JACKSON; ROBERT LIPSCOMB; RAPHAEL SHAPIRO, Board of Directors of St. Vincent Hospital, in their individual and official capacities; EDGAR BILLOWITZ, M.D.; JIM CHILDERS, Chief Financial Officer; ELLEN SUTTON, St. Vincent Hospital Staff, in their individual and official capacities; PABLO SEDILLO, Administrator of Santa Fe County Detention Center Management, Corrections Corporation of America, in his individual and official capacities; JOHN/JANE DOES, unnumbered, Corrections Corporation of America Santa Fe County Detention Center employees in his or her individual and official capacities; MICHAEL BURKHART, Secretary of the New Mexico Department of Health; J. ALEX VALDEZ, Secretary of the New Mexico Department of Health; PABLO HERNANDEZ, M.D., Las Vegas Medical Center Administrator; FELIX ALDERETE, Administrator of the Las Vegas Medical Center and Members of its Governing Board; JACK CALLAGHAN; NORTY KALISHMAN; LARRY A. MARTINEZ; PAUL K. MINOQUE, Las Vegas Medical Center Governing Board Members, in their individual and official capacities; JAMES WALCH, M.D., Las Vegas Medical Center Staff Psychiatrist in his individual and official capacities; J. MICHAEL MASH, Las Vegas

Medical Center Staff Psychologist in his individual and official capacities; R.G. BRASSEUR, M.D.; JESSICA L. BERRY, Ph.D., in their individual and official capacities; ADAM COPPENS; JAMES F. UPSHAW; MATTHEW SANDOVAL, in their individual and official capacities; PAUL D. MANNICK; KATHY MANNICK,

Defendants-Appellees.

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **PORFILIO** , and **LUCERO** , Circuit Judges.

---

Following her arrest, subsequent detention relating to alleged mental problems, and eventual involuntary commitment for mental health care, plaintiff Robin Wakeland brought this action raising claims under 42 U.S.C. §§ 1983 and 1985 and New Mexico tort law against defendants, who were in some way involved in her arrest, detention and/or commitment. [1] In a variety of orders, the

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

district court granted defendants' motions to dismiss for failure to state a claim and/or for summary judgment and entered judgments in favor of defendants. Plaintiff appeals. Reviewing the district court's decisions to dismiss and to grant summary judgment to defendants de novo, *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (Rule 12(b)(6)); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999) (summary judgment), we reject plaintiff's contentions of error and affirm.

Although we view the facts in the light most favorable to her, *see Sutton*, 173 F.3d at 1236, *Simms*, 165 F.3d at 1326, many of her allegations contained in her ninety-eight page complaint and other papers are irrelevant to the analysis of her claims. We therefore present first a general description of the events underlying her various claims, and then will present any other relevant and more specific allegations in our analysis of her claims.

This case ultimately arises from a dispute between plaintiff and her next-door neighbors, Paul and Kathy Mannick. The Mannicks instituted a state court action against plaintiff, apparently in 1994. On May 12, 1994, the state court issued a preliminary injunction enjoining plaintiff from trespassing on the

---

therefore ordered submitted without oral argument.

Mannicks' property and interfering with the construction of the Mannicks' new home. On June 15, 1994, Adam Coppens, an employee of the company building the Mannicks' home, called the Santa Fe County Sheriff's Office to report that plaintiff was interfering with the construction of the home. Officers Larry Martinez and Vince Crespin were dispatched to handle the complaint. When they arrived, plaintiff refused to identify herself or answer questions without a lawyer present and refused to acknowledge the preliminary injunction. Plaintiff was arrested for restricting, evading, or obstructing an officer and for concealing her identity. These charges were eventually dropped.

In October 1994, the Mannicks complained to the Sheriff's Office that plaintiff was flashing her car lights into their residence. Officer Martinez investigated, and plaintiff again refused to answer any questions without a lawyer present, though she did produce her driver's license to identify herself. Officer Martinez did not arrest her.

On December 18, 1994, the Mannicks again called the Sheriff's Office to report what they believed to be bizarre behavior. This time, Corporal John Lucero and Officer Dennis O'Brien were dispatched to the site. According to plaintiff, the Mannicks told the officers that she watches them with binoculars, takes photos of them, shines lights into their home, sets gopher traps on her property, and entices their children to come onto her property near the traps.

After talking to the Mannicks, walking around plaintiff's property, and observing plaintiff sitting on the ground rocking back and forth and staring at Corporal Lucero with a blank or distant look when he tried to question her, the two officers concluded that she was suffering from a mental disorder and could be a danger to herself or others. They therefore took her into protective custody and transported her to St. Vincent Hospital for an emergency mental health examination. At the hospital, Corporal Lucero informed Dr. Edgar Billowitz of their observations and the Mannicks' complaints. After examining her, during which time she refused to answer any questions without a lawyer present, Dr. Billowitz issued a twenty-four-hour mental health hold on her and ordered her to be held in protective custody overnight at the Santa Fe County Detention Center, which is operated by the Corrections Corporation of America. On re-examination at St. Vincent the next day, Dr. Billowitz issued a seven-day mental health hold certificate and instructed that plaintiff be taken to the Las Vegas Medical Center, to which she was transported by Officer Ron Buchholtz.

On arriving at the Medical Center on December 19, plaintiff was examined by psychiatrist Dr. James Walch. Following examination by Dr. Walch, and on his recommendation, counsel for the New Mexico Department of Health filed a petition for involuntary commitment on December 20, and attorney Matthew Sandoval was appointed to represent her on the petition. After a hearing at which

Sandoval represented plaintiff, the state court ordered plaintiff's commitment for up to thirty days at the Medical Center. She was released from the Medical Center on December 29, 1994.

On January 11, 1995, plaintiff went to the Sheriff's Office to provide additional information relating to a criminal trespass complaint she had made against the Mannicks. She met with Officer Vanessa LaHargoue, who prepared a report but did not forward the complaint to the district attorney.

The state court in the Mannicks' action against plaintiff held a bench trial and issued its findings of fact and conclusions of law on September 12, 1995. The court found, inter alia, that plaintiff had caused the Mannicks to reasonably fear for the safety of their small children, had intentionally invaded the Mannicks' property by shining spotlights onto their property and into their residence, and had taken other actions intended to harass and intimidate the Mannicks. It concluded that plaintiff's actions constituted a private nuisance, invasion of privacy, assault, intentional infliction of emotional harm and stalking of the Mannicks' children. It awarded compensatory and punitive damages against plaintiff totaling $85,000 and issued a permanent injunction enjoining her, inter alia, from harassing and intimidating the Mannicks and their children. In October 1996, the Mannicks asked the Sheriff's Office to serve a writ of execution of their judgment on

plaintiff. Officer Linda Ortiz attempted to serve plaintiff on several occasions at her home, but never encountered her.

On June 10, 1997, plaintiff filed her complaint against all the above individuals plus a number of others associated with the entities involved, asserting federal claims for violation of her constitutional rights and state law tort claims. She appeals the district court's denial of her claims against nearly all defendants [2] along with the district court's imposition of sanctions against her regarding her claims against the Mannicks. We discuss below the district court's actions and plaintiff's arguments on appeal with respect to each set of defendants.

*Claims against the Mannicks*

Plaintiff asserted claims under §§ 1983 and 1985 contending that the Mannicks acted in cooperation and conspired with the Sheriff's Office in carrying out policies of invidious discrimination and unconstitutional detention. The district court granted the Mannicks' motion to dismiss, concluding that plaintiff had failed to show that the Mannicks were state actors and that her allegations of

---

[2] Although her notice of appeal indicated she was appealing the dismissal of her claims against all defendants, she did not include any relevant argument regarding claims against Adam Coppens in her opening brief and therefore has waived these claims. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

conspiracy were impermissibly bald and conclusory. Plaintiff challenges these determinations.

To bring an action under § 1983, a plaintiff must establish that the defendant acted under color of state law. *See Pino v. Higgs*, 75 F.3d 1461, 1464 (10th Cir. 1996). Thus, to hold a private individual or entity liable under § 1983 for a constitutional violation, the plaintiff must show that the individual's conduct is fairly attributable to the state. *See id.* at 1465; *see also Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442, 1447-57 (10th Cir. 1995) (discussing four tests for determining state action). Moreover, to the extent that a conspiracy may form the basis for a § 1983 claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants;" conclusory allegations of conspiracy are not enough. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

We agree with the district court that plaintiff has only conclusorily and inadequately alleged that the Mannicks conspired with the Sheriff's Office to violate her constitutional rights. Merely making reports to law enforcement authorities does not constitute state action. In the situations about which plaintiff complains, the Mannicks' complaints were followed by independent investigation by sheriff's officers prior to their detention of plaintiff. *See Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) (holding defendant's

complaint to police regarding plaintiff's activities followed by police questioning of plaintiff and subsequent arrest was not state action). Finally, the district court properly rejected plaintiff's claim for "invidious discrimination" under the second part of § 1985(2) because plaintiff failed to allege any racial or class-based discrimination. *See Davis v. Township of Hillside*, 190 F.3d 167, 171 (3d Cir.), *petition for cert. filed*, 68 U.S.L.W. 3367 (U.S. Nov. 22, 1999) (No. 99-888); *Santistevan v. Loveridge*, 732 F.2d 116, 119 (10th Cir. 1984) (McKay, J., concurring).

Plaintiff also challenges the district court's order that she pay the Mannicks' attorney fees and costs as a sanction against her pursuant to Fed. R. Civ. P. 11. Following a hearing, the court granted the Mannicks' motion for sanctions based on their contentions that she filed her complaint against them for purposes of harassment and that her claims were frivolous and based on neither law nor fact. We review the district court's imposition of sanctions for abuse of discretion. *See Barrett v. Tallon*, 30 F.3d 1296, 1301 (10th Cir. 1994). Plaintiff contends that her complaint was not frivolous and that the Mannicks were "unreliable informants" regarding her activities, but by the time plaintiff filed her complaint in this action, the state court had essentially substantiated the Mannicks' complaints to the sheriff's officers regarding her activities. We see no abuse of discretion in the imposition of sanctions.

*Claims against James Upshaw*

Upshaw was the supervisor of Adam Coppens at the construction company building the Mannicks' new home, and the district court dismissed the claims against both Upshaw and Coppens sua sponte for the same reasons it dismissed the claims against the Mannicks. Although challenging Upshaw's dismissal, plaintiff neither explains how he allegedly violated her rights, nor presents argument why the district court erred. We will not make her argument for her. *See American Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992). [3]

*Claims against St. Vincent Hospital defendants*

The St. Vincent defendants include Dr. Billowitz, the St. Vincent board of directors, individual members of the board, and several employees. Plaintiff asserted federal claims against them for lack of professional judgment and egregious acts, illegal detention, denial of her right to an attorney, conspiracy with the Sheriff's Office, and violation of privacy, and state law claims for fraud and intentional infliction of emotional distress. The district court granted summary judgment to the St. Vincent defendants on all of plaintiff's claims.

---

[3] Throughout her opening brief, plaintiff attempts generally to incorporate by reference arguments, authorities and facts contained in various documents filed in the district court. This is not acceptable appellate argument, and we will not consider these references. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998).

-11-

It held that her § 1983 claims failed because there was no state action, finding her allegations of state action bald and conclusory, and that any § 1985(3) claim failed because there were no allegations of race or class-based discrimination. The court also rejected her state law claims for fraud, because she did not allege any intent to deceive, and for intentional infliction of emotional distress, because the acts of which she complained were not sufficiently outrageous or intolerable to support such a claim.

On appeal, the only specific argument plaintiff presents is that the St. Vincent defendants should be considered state actors because they cooperated with the Sheriff's Office and because the facility is a community mental health facility under state law. We agree with the district court that cooperation with state authorities and certification for involuntary commitment under state law are insufficient to qualify defendants as state actors. *See Pino*, 75 F.3d at 1466-67. We find plaintiff's attempts to distinguish *Pino*, which also dealt with certification by a private physician under New Mexico law, unpersuasive. To the extent she challenges the district court's rejection of her other claims against these defendants, we see no error by the district court.

*Claims against Sheriff's Office personnel*

Plaintiff contends that officers violated the Fourth Amendment by seizing her without probable cause; that they engaged in invidious discrimination against her by treating her more harshly than similarly situated individuals; that they denied her right to a state-appointed attorney and incarcerated her without an extreme emergency in violation of state law; and that they were liable under conspiracy and supervisory liability theories. The district court concluded that plaintiff had not shown that defendants violated clearly established federal law and granted summary judgment in their favor on qualified immunity grounds. *See id.* at 1467.

On appeal, plaintiff contends that the defendant officers illegally seized her without probable cause, because they relied on private citizens' reports that were unreliable, and that they cannot legally respond to reports of a violation of a civil injunction. We agree with the district court that the officers' actions were reasonable in light of the circumstances and that they had probable cause for detaining plaintiff. While they did rely on reports by the Mannicks and Coppens, they also observed plaintiff and her property (on which the gopher traps were set), were aware of the preliminary injunction against her, talked or tried to talk to plaintiff, and detained and transported her in accordance with Dr. Billowitz' directions. Plaintiff has failed to identify the individuals who were allegedly

-13-

similarly situated to her, but treated less harshly than she was, to support her discrimination or equal protection claim. We agree with the district court that under N.M. Stat. Ann. § 43-1-4, she was entitled to an attorney during judicial commitment proceedings, but not at all times during her detention. *Cf. Project Release v. Prevost*, 722 F.2d 960, 976 (2d Cir. 1983) (reaching similar conclusion under comparable New York law). Again, her allegations of conspiracy are impermissibly conclusory, and she has not shown how the Sheriff's Office could be liable under the state mental health code for her detention.

*Claims against Pablo Sedillo and Corrections Corporation of America employees*

As with Upshaw, plaintiff neither explains how these defendants allegedly violated her rights, nor presents argument explaining how the district court erred. We therefore will not disturb the district court's dismissal of these defendants.

*Claims against Las Vegas Medical Center and the New Mexico Department of Health defendants*

Plaintiff contends that these defendants are liable for violation of her Fifth Amendment right to due process, egregiousness, detention for interrogation, sexual harassment, lack of professional judgment, denial of her right to an attorney, supervisory liability, and conspiracy. The district court denied plaintiff's claims against these defendants in their official capacities on Eleventh Amendment grounds and concluded that she failed to state any claims against

them in their individual capacities. On appeal, plaintiff argues only that immunity is defeated by established privacy and associational rights, lack of professional judgment and egregiousness, and that, for a variety of reasons, *Pino* does not apply. *Pino* does not apply, and the district court did not rely on it, because it is a qualified immunity rather than Eleventh Amendment immunity case. Her remaining contentions do not overcome an Eleventh Amendment defense.

*Claims against Matthew Sandoval*

Plaintiff asserted a claim against Sandoval for legal malpractice in his representation of her relating to her involuntary commitment. The district court held that he was immune from this state law claim under the New Mexico Indigent Defense Act, N.M. Stat. Ann. § 31-16-10. Plaintiff challenges the constitutionality of the statute on equal protection grounds, arguing that it deprives her of a remedy against Sandoval based on her indigent status, and that strict scrutiny analysis should be applied in reviewing the constitutionality of the statute. We agree with the district court's rejection of this argument based on the New Mexico Court of Appeal's analysis of the same issue in *Coyazo v. State*, 897 P.2d 234, 238-41 (N.M. Ct. App. 1995) (applying heightened rational basis test on basis that indigent status does not merit strict scrutiny and concluding statute passes that test).

*Claims against John and Jane Doe defendants*

Plaintiff contends that the district court should not have dismissed the Doe defendants because they were never served and the court did not have subject matter jurisdiction over them. We find this argument unpersuasive.

*Challenge to constitutionality of statutes*

Plaintiff also challenges the constitutionality of New Mexico statutes that allowed (1) the disclosure of her medical information and (2) her involuntary commitment for five days without a judicial hearing to determine probable cause for her commitment. Because she seeks declaratory or injunctive relief and has not demonstrated a likelihood of being similarly injured in the future, she lacks standing to assert these claims. *See Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998).

Plaintiff's motion to supplement her opening brief is GRANTED. The judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

-16-